## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CR-22-328-PRW** |
| | ) | |
| **JARED MICHAEL HARRISON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED ON THE UNCONSTITUTIONALITY OF 18 U.S.C. § 922(g)(3) WITH BRIEF IN SUPPORT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

**INTRODUCTION** ....................................................................................... 1

**STATEMENT OF FACTS** ......................................................................... 2

**ARGUMENT & AUTHORITY** .................................................................. 3

I.   Section 922(g)(3) Violates Mr. Harrison's Due Process Rights
     Because the Statute is Unconstitutionally Vague,
     Both Facially and as Applied ............................................................... 3

     a.  Section 922(g)(3) is facially void because the text is ambiguous ..................... 4

     b.  Judicial attempts to salvage § 922(g)(3) violate the Separation of Powers ........ 9

     c.  Section 922(g)(3) is unconstitutionally vague as applied to Mr. Harrison ....... 10

II.  Section 922(g)(3) Unconstitutionally Infringes on an Individual's Right
     To Bear Arms Under the Second Amendment ........................................ 11

     a.  The Second Amendment's plain text covers conduct at issue
         in § 922(g)(3) .......................................................................... 12

     b.  The Government cannot meet its burden to show that
         § 922(g)(3)'s restrictions are "consistent with the Nation's
         historical tradition of firearm regulation .................................... 13

**CONCLUSION** ...................................................................................... 16

**CERTIFICATE OF SERVICE** ............................................................... 19

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*District of Columbia v. Heller*
554 U.S. 570 (2008) .................................................................. 11, 12, 14, 15

*Huddleston v. United States*
415 U.S. 814 (1974) ................................................................................ 7

*Johnson v. United States,*
576 U.S. 591 (2015) ............................................................................. 4, 8

*Kolender v. Lawson,*
461 U.S. 352 (1983) ............................................................................... 4

*McDonald v. City of Chicago, Ill.*
561 U.S. 742 (2010) .............................................................................. 11

*Muscarello v. U.S.*
524 U.S. 125 (1998) .............................................................................. 13

*New York States Rifle and Pistol Association v. Bruen,*
142 S. Ct. 2111 (2022)......................................................................*passim*

*Rehaif v. United States*
139 S. Ct. 2191 (2019)......................................................................... 8, 9

*Sessions v. Dimaya*
138 S. Ct. 1204 (2018)........................................................................ 8, 10

*United States v. Davis,*
139 S. Ct. 2319 (2019)........................................................................ 9, 10

*United States. v. Jackson,*
280 F.3d 403 (4th Cir. 2002) .................................................................... 6

*United States v. Morales-Lopez,*
2022 WL 2355920 (D. Utah June 30, 2022) ................................................... 4, 5

*United States v. Patterson,*
431 F.3d 832 (5th Cir. 2005) .................................................................... 6

*United States v. Turnbull,*
349 F.3d 558 (8th Cir. 2003) ............................................................ 6

*United States v. Yancey,*
621 F.3d 681 (7th Cir 2010) ............................................................. 6

## CONSTITUTION AND STATUTES

18 U.S.C. § 922(g)(1) ...................................................................... 6

18 U.S.C. § 922(g)(3) ............................................................... *passim*

18 U.S.C. § 922(g)(4) ...................................................................... 6

18 U.S.C.  924(a)(2) ........................................................................ 8

U.S. Const., amend. II ................................................................... 11

U.S. Const., amend.  V ................................................................ 1, 3

*Gun Control Act of 1968*
Pub. L. 90-618, 82 Stat. 121 ......................................................... *14*

## FEDERAL RULES

Rule 12(b)(3)(B), Federal Rules of Criminal Procedure ..................... 1

## OTHER AUTHORITIES

114 Cong. Rec. 13647 (1968) .......................................................... 7

4 William Blackstone, *Commentaries of the Laws of England* 21 (1769) ........................ 9

Cornell, Saul, *Commonplace of Anachronism: The Standards Model, the Second Amendment, and the Problem of History in Contemporary Constitutional Theory* 16 Const. Comment. 221 (1999) ............................................... 15

H.R. REP 91-5149, 91st Cong., 2d Sess. 1970 .................................. 7

H.R. REP 99-495, 99th Cong., 2d Sess. 1986 ................................... 7

H.R. REP 115-437, 115th Cong., 1st Sess. 2017 ............................... 8

S.Rep. No. 1501, 90th Cong., 2d Sess. 1968....................................................................... 7

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CR-22-328-PRW** |
| | ) | |
| **JARED MICHAEL HARRISON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED ON THE UNCONSTITUTIONALITY OF 18 U.S.C. § 922(g)(3) WITH BRIEF IN SUPPORT

### INTRODUCTION

The Defendant, Jared Michael Harrison, moves the Court, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B), to dismiss the Indictment, which charges possession of a firearm while being an unlawful user of marijuana, in violation of 18 U.S.C. § 922(g)(3). The Court should dismiss the Indictment because § 922(g)(3) is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. The statute fails to give ordinary people fair notice of the conduct it punishes because it does not define the term "unlawful user." Thus, a citizen must guess at what point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm.

The statute is also unconstitutional in light of the U.S. Supreme Court's recent ruling in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The restriction contained in § 922(g)(3) prohibits possession of a firearm for any person "who is an unlawful user of or addicted to a controlled substance." Because the Government cannot demonstrate that prohibiting such conduct is consistent with the Nation's historical

tradition of firearm regulation, the Indictment must be dismissed.

## STATEMENT OF FACTS

On May 20, 2022, Jared Harrison was pulled over in Lawton, Oklahoma, for failing to stop at a red light. The officer approached the vehicle and asked Mr. Harrison to roll down his window. After Mr. Harrison complied, the officer claimed he could smell the odor of marijuana coming from the vehicle. Upon further questioning, Mr. Harrison stated that he did not have a medical marijuana card and was headed to work at Vertical Vibez, a local dispensary.

At the officer's request, Mr. Harrison exited the vehicle. The officer observed that Mr. Harrison was wearing an ankle monitor. He advised that he was on probation in Texas for aggravated assault; however, Mr. Harrison was actually on bond pending trial. (*State v. Harrison*, F22-125-363 – Denton County District Court, Denton, Texas). Mr. Harrison was searched and nothing illegal was found on his person. No field sobriety tests were conducted, nor was a blood draw requested.

After a second officer arrived, Mr. Harrison's vehicle was searched. Officers observed a revolver laying on the driver's side floor board and a backpack on the passenger seat. The backpack contained several marijuana products including a glass jar containing 35.4 grams of loose marijuana, a prescription bottle containing 23.8 grams of marijuana, an empty prescription bottle, THC gummies, a pre-rolled marijuana cigarette, and two THC vape cartridges. Some of the containers had Vertical Vibez labels. The marijuana cigarette was found on a tray along with some marijuana stems.

Mr. Harrison was arrested at the scene. On May 23, 2022, he was charged in

Comanche County District Court with Possession of Marijuana (District Court Case No. CM-22-745), Possession of Paraphernalia (District Court Case No. CM-22-746), and Failure to Obey a Traffic Signal (District Court Case No. TR-2022-1150). All three cases are pending. On August 17, 2022, a grand jury returned an Indictment, charging Mr. Harrison with possessing a firearm, "with knowledge that he was an unlawful user of marijuana." (ECF #1).

## ARGUMENT & AUTHORITY

Section 922(g)(3) is unconstitutional for two reasons, First, the statute violates the Due Process Clause of the Fifth Amendment because, facially, and as applied, the statute is so vague that it fails to provide fair notice of the acts prohibited and allows for arbitrary and discriminatory enforcement. Second, § 922(g)(3) violates the Second Amendment, facially, and as applied, because historical traditions do not support prohibiting persons who are accused of being a "user of" or "addicted to" a controlled substance from possessing firearms.

I.  **Section 922(g)(3) Violates Mr. Harrison's Due Process Rights because the Statute is Unconstitutionally Vague, both Facially and as Applied.**

Section 922(g)(3) prohibits possession of a firearm where an individual is found to be "addicted to" or an "unlawful user of" a controlled substance. However, the statue itself fails to define what it means to be an addict, or one who unlawfully uses a controlled substance, thereby creating several vagueness problems.

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST., amend. V. Courts have long held

3

that "the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague, that it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 596 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983)). In addition to violating due process guarantees, vague laws contravene the basic tenet of the separation of powers doctrine. *U.S. v. Davis,* 139 S. Ct. 2319, 2325 (2019) (affirming that vague laws allow "relatively unaccountable police, prosecutors, and judges," rather than elected representatives, to define the law thereby undermining "democratic self-governance"); see also *Kolender*, 461 U.S. at 358 ("[I]f the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, [it would] substitute the judicial for legislative department"). Thus, where a law is so vague it violates a defendant's due process rights, "the role of courts under our constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Davis* at 2323.

   a.  **Section 922(g)(3) is facially void because the text is ambiguous.**

   Congress' decision not to define the key terms within § 922(g)(3) renders the statute facially invalid because it fails to provide individuals of common intelligence notice as to whether they fall within its proscribed class. As written, § 922(g)(3) must be stricken as facially void-for-vagueness. *See*, *United States v. Morales-Lopez*, No. 2:20-CR-00027-JNP, 2022 WL 2355920, at *8 (D. Utah June 30, 2022).

   While the statute does reference a definition of "controlled substance," it provides

no such definition for the terms "addicted to" or "unlawful user." "In interpreting statutes, it is the duty of the court to give effect, if possible, to every clause and word of a statute." *Morales-Lopez* at 8. "Here the legislature included two categories of individuals covered by the statute." *Id.* "Thus, the court must give independent meaning to unlawful user and a person addicted to a controlled substance." *Id.*

The term "addict" is defined as: (1) "one exhibiting a compulsive, chronic, physiological or psychological need for a habit-forming substance, behavior, or activity," or (2) one strongly inclined to do, use, or indulge in something repeatedly." *See* Miriam-Webster.com (2022) (definition of "addict"). However, the statute does not establish when a behavior becomes compulsive or chronic, or how an individual prosecutor, judge, or jury, will determine when a behavior, or activity, has become a physiological or psychological need or habit. Also, the statute fails to clarify exactly what the government must prove. Must there be some overt act or is an attempt sufficient? Is the inclination to use a substance without action enough to deprive one of their constitutional rights? Similarly, how can a defendant know if they are "strongly inclined" to do, use, or indulge in something repeatedly without further clarification?

Turning to the term "user," it must be something less than an addict. *Morales-Lopez* at 8. The dictionary simply defines the term as: "one who uses." See Miriam-Webster.com (2022) (definition of "user"). Section 922(g)(3), therefore, prohibits firearm possession by one who unlawfully "uses" a controlled substance, but does not clarify if there are any temporal constraints on when such use took place. Thus, on its face, the statute would prohibit anyone who has ever unlawfully used a controlled substance from possessing a

5

firearm. Without a temporal link or defined threshold for determining when the prohibited status begins, individuals are left to read § 922(g)(3) with the understanding that "once a user, always a user."

In *Morales-Lopez*, the District Court stated, "this court finds an interpretation that would make gun possession at any point in a person's life after a single instance of ingesting drugs absurd." *Id*. at 8. In assessing the constitutionality of § 922(g)(3), the Seventh Circuit noted unlawful drug users "could regain [their] right to possess a firearm by simply ending [their] drug abuse." *United States v. Yancey*, 621 F.3d 681, 696 (7th Cir. 2010). The Fourth Circuit concluded, "[s]ection 922(g)(3) does not forbid possession of a firearm *while unlawfully using* a controlled substance. Rather the statute prohibits *unlawful users* of controlled substances…from possessing firearms. *U.S. v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002). Moreover, several circuits, including the Fifth, have rejected such an expansive interpretation of § 922(g)(3) recognizing that a temporal nexus must be read into the statute to avoid rendering it unconstitutional. See *United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005) (upholding § 922(g)(3) against an "as applied" vagueness challenge) (citing *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (citations omitted)). Thus, the plain language of the statute renders § 922(g)(3) unworkable because it subject to multiple interpretations each more problematic and ambiguous than the last.

Turning to the context of the broader statute, the vagueness concerns of § 922(g)(3) are compounded. Unlike § 922(g)(1) (possession of a firearm by a felon) or § 922(g)(4) (possession of a firearm by one adjudicated as a mental defective or who has been committed to a mental institution), § 922(g)(3) has no adjudication requirement or

6

prerequisite of a discrete act, such as commitment to an institution, prior to receiving the restricted status.  Without a discernable threshold for when one obtains the status "addict" or "unlawful user of" a controlled substance, it cannot be said that the statue is unambiguous, nor does it provide an ordinary person notice of the statutory proscriptions.

Likewise, Congressional intent sheds no light on the ambiguities. The legislative record indicates that "the principal purpose of the federal gun control legislation… was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (quoting S. Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968). U.S.Code Cong. & Admin. News 1968, p. 4410; *see also*, Congressman Celler, the House Manager ,114 Cong. Rec. 13647, 21784 (1968) ("No one can dispute the need to prevent drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses, from buying, owning, or possessing firearms. This bill seeks to maximize the possibility of keeping firearms out of the hands of such persons."). Subsequent legislative history of § 922(g)(3), however, is telling. Since its passage, Congress has amended § 922(g)(3) several times but at no time has it clarified what it means to be "addicted to" or "an unlawful user of" the prohibited substance(s). *See e.g.*. H.R. REP. 99-495, 99th Cong., 2d Sess., 14, 1986 U.S.C.C.A.N. 1327, 1340 (expanding the list of substances prohibited under § 922(g)(3)); H.R. REP. 91-1549, 91st Cong., 2d Sess., 1970 U.S.C.C.A.N. 4007, 4011(prohibiting the sale of explosives to "drug addicts"). Congress did, however, provide guidance under the National Instant Criminal Background Check System Improvement Amendments Act of 2007 in which it stated that

a record, for purposes of § 922(g)(3):

> identifies a person who is an unlawful user of, or addicted to a controlled substance (as such terms "unlawful user" and "addicted" are respectively defined in regulations implementing section 922 (g)(3) of title 18, United States Code, as in effect on the date of the enactment of this Act) as demonstrated by arrests, convictions, and adjudications, and whose record is not protected from disclosure to the Attorney General under any provision of State or Federal law.

H.R. REP. 115-437, 20. Though this, too, fails to supply a definition for what it means to be a "addicted to" or "an unlawful user of" a controlled substance, Congress has, at the very least, demonstrated that it is possible and desirable for the Attorney General to obtain verifiable information establishing a history of drug use as it relates to § 922(g)(3). It follows then that Congress has the ability, as well as the constitutional mandate, to abandon § 922(g)(3) or amend it so an ordinary person understands its proscription and ensures against arbitrary enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

From legislative history it is clear that Congress intended to bar certain classes of people from possessing of a firearm. Yet how to identify this class, and how one may evaluate their risk of entering this class, remains unanswered. *e.g. Johnson v. U.S.,* 576 U.S. at 598. (finding the residual clause of the Armed Career Criminal Act void for vagueness and noting the clause "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony"). "Without knowledge of [their criminal] status, [a] defendant may well lack the intent needed to make [their] behavior wrongful." *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019). In its *Rehaif* decision, the Supreme Court held that prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), requires that the government "prove both that the defendant knew he possessed a firearm and that he knew he belonged

to the relevant category of persons barred from possessing a firearm." *Id.* Scienter requirements, such as the one examined in *Rehaif*, are consistent with the understanding that, underlying criminal law, is the principle of "a vicious will." *Id.* at 2196 (citing 4 William Blackstone, Commentaries on the Laws of England 21 (1769)). Thus, in any case charged under § 922(g)(3) the Government must establish, beyond a reasonable doubt, that the defendant knew he fell within the statute's proscribed class.

Mr. Harrison demonstrates that the plain language of the statute, congressional history, and judicially created definitions, all fail to provide an individual with notice of their status as an "unlawful user." This exact observation underscores the vagueness problem at the core of § 922(g)(3). Without comprehensible statutory definitions, it is unclear when a person begins, or ends, use of a controlled substance that prohibits possession of firearm. Unless one first knows their status as a prohibited person, they cannot knowingly commit a violation of § 922(g)(3). The constitutional infirmities of § 922(g)(3) are so grave they render the statute meaningless and unenforceable. Because the statutory language of § 922(g)(3) is so vague it fails to provide an ordinary person fair warning about what the law demands of them including whether they fall within a prohibited status under the statute, it must be found unconstitutionally vague.

**b. Judicial attempts to salvage § 922(g)(3) violate the Separation of Powers.**

In *Davis,* the Supreme Court rejected the notion of judicial intervention aimed at saving a vague law. *See Davis*, 139 S. Ct. at 2323 ("Only the people's elected representatives in Congress have the power to write new federal criminal laws"). In part, this mandate exists to "[guard] against arbitrary or discriminatory law enforcement by

insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. at 1212.

As examined above, both the plain language of the statute, as well as legislative history of § 922(g)(3), fail to provide insight into exactly which class of people Congress intended to exclude from those who may exercise their Second Amendment rights. There is nothing contained within the statute, or history, to support the judicially created definitions of "addicted to" and "unlawful user." Section 922(g)(3) may only be rectified, as it relates to a void for vagueness challenge, through congressional action addressing the statutory deficiencies. Congress' decision not to do so, especially when it has taken steps to clarify similar terms in other contexts, is not an invitation to the courts to abandon judicial restraint. *Davis*, 139 S. Ct. at 2333. The continued attempts to judicially define and salvage § 922(g)(3) are not only futile, they are an unconstitutional violation of the Separation of Powers doctrine. As such, the statute, as written by Congress, must be stricken as void for vagueness.

### c. Section 922(g)(3) is unconstitutionally vague as applied to Mr. Harrison.

Section 922(g)(3) is unconstitutionally vague, as applied, because Mr. Harrison did not have fair notice that he was prohibited from possessing a firearm if determined to be an unlawful user of marijuana. Further, Mr. Harrison could not have known if he even qualified as an unlawful user of marijuana. Because Congress has not given the term "unlawful user" substantive meaning, Mr. Harrison could not have understood that he potentially fell within § 922 (g)(3)'s prohibited class based on the language of the statute alone.

Looking then to the definitions set forth by the various circuits, and considering the Government's potentially admissible evidence, Mr. Harrison's history does not establish that he is one who "regularly engages" in unlawful use of a controlled substance "over a period of time proximate to or contemporaneous" with his arrest in the present matter. Mr. Harrison does not have a demonstrable criminal history of regular use of any controlled substance. There is no evidence that he has ever received treatment for drug use. Additionally, while he was arguably in possession of marijuana products, there is no evidence that he ever consumed any of the products. At the time of his arrest he did not demonstrate any signs of being under the influence of a controlled substance. The facts are insufficient to establish that Mr. Harrison was an unlawful user of a controlled substance as defined by the Courts. Despite the plain language of the statute, and judicially created definitions, § 922(g)(3) remained so vague it failed to give Mr. Harrison fair notice that he fell within the statue's prohibited class, and any enforcement of the statute against Mr. Harrison was arbitrary.

## II.    Section 922(g)(3) Unconstitutionally Infringes on an Individual's Right to Bear Arms Under the Second Amendment.

The Second Amendment to the United States Constitution "confer[s] an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). This right "shall not be infringed." U.S. CONST. amend. II. The right to keep and bear arms is fundamental, applicable against state and local governments, and entitled to the same protections as other fundamental rights enshrined in the Constitution. *See, McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010). Still, Congress passed § 922(g)(3), a law that

strips citizens of rights guaranteed to them by the Second Amendment without any historical precedent. The criminalization of the possession of firearms falls within the scope of the Second Amendment. Thus, the blanket prohibition on firearm possession by those who are unlawful users of or addicted to a controlled substance is unconstitutional under the Supreme Court's new *Bruen* analysis.

After, the U.S. Supreme Court's *Heller* decision in 2008, "most federal appellate courts applied a two-step framework using a means-ends analysis to determine the constitutionality of § 922(g) restrictions on Second Amendment rights." *U.S. v. Jackson*, CR-22-59-D – Order dated 8/19/2022 (ECF #45).  However, in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the Court adopted a new standard for determining the constitutionality of regulation based on the Second Amendment. The Court stated,

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation."

*Id.* at 2129-30.

Therefore, the first step in the Court's analysis is to determine whether the plain text of the Second Amendment covers a defendant's conduct.

### a.  The Second Amendment's plain text covers conduct at issue in § 922(g)(3).

In *Bruen,* the Court stated that the Second and Fourteenth Amendments "protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 2122. The decision further acknowledged "that the right to "bear arms" refers to the right to "wear,

bear, or carry…upon the person or in the clothing or in a pocket, for the purpose…of being armed and ready for offensive or defensive action in a case of conflict of another." *Id*. At 2134. (quoting *Muscarello v. U.S.*, 524 U.S. 125, 143 (1998). Section 922(g)(3) is a complete bar on firearm possession. It is not limited by the type of firearm or the purpose for which the firearm might be used. Nor is it limited to firearms possessed in a particular public area. It applies with equal force to firearms kept in the home for self-defense.  A person's ability to possess a firearm for self-defense is the central component of the Second Amendment right. Thus, the conduct of any individual charged under this statute is clearly covered by the plain text of the Second Amendment.

**b.  The Government cannot meet its burden to show that § 922(g)(3)'s restrictions are "consistent with the Nation's historical tradition of firearm regulation."**

The second step of the *Bruen* analysis places the burden on the government to demonstrate that the regulation is consistent with the "Nation's historical tradition of firearm regulation." Under *Bruen's* new model, disarmament laws that address persistent social problems require evidence that similar provisions existed at the time of ratification. "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen* at 2131. With this understanding, the government clearly cannot meet its burden to show that the Nation's history, particularly around the passage of the Second Amendment, supports firearm restrictions for those addicted to, or who unlawfully used, a controlled substance.

13

As in *Heller* and *Bruen*, historical examples of regulations offered by the government must be "distinctly similar" to § 922(g)(3) because the restriction does not address "unprecedented societal concerns or dramatic technological changes[.]" See *Bruen*, 142 S. Ct. at 2132–33. There are no "distinctly similar" regulations from the founding. Indeed, the history of barring firearm possession by those who use or are addicted to controlled substances (or narcotics in general) is limited and relatively recent. Congress first passed § 922(g)(3) in 1968. *See* Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213 (codified at 18 U.S.C. § 921 *et seq*.). This was the first time in the Nation's history that Congress enacted such a ban. The government cannot rely on the passage of a mid-twentieth century statute to establish a long-standing historical tradition dating back to the enactment of the Second Amendment. See *Bruen*, 142 S. Ct. at 2137. In fact, the Supreme Court specifically declined to consider any twentieth century evidence offered by the respondents in *Bruen*, noting it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* 142 S. Ct. at 2154, n. 28.

Nor can the Government rely on the general pronouncement by the Supreme Court in *Heller* that presumptively lawful regulatory measures include: "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller* at 626-27. The list does not include those who are accused of being an unlawful user of a controlled substance. Those regulations would not be "distinctly similar" to § 922(g)(3) to address a "general societal problem." Even if § 922(g)(3) were a uniquely modern regulation, such that the

14

Court could expand its historical analysis to include merely similar historical analogues, those longstanding regulations are not "relevantly similar" because they do not impose a comparable burden or evince comparable justifications. See *Bruen*, 142 S. Ct. at 2132-33. While the examples provided by the Court in *Heller* were not exhaustive, they generally all comport with a historical principle of disarming select groups for the sake of public safety. *See NRA*, 700 F.3d at 200-01 (citing Saul Cornell, *Commonplace or Anachronism: The Standard Model, the Second Amendment, and the Problem of History in Contemporary Constitutional Theory*, 16 Const. Comment. 221, 231–36 (1999)). There is no comparable "public safety" justification for disarming all drug users. Moreover, the Supreme Court has since explained that the "government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126. Therefore, the Government cannot rely on general public safety justifications to uphold § 922(g)(3).

Even if this Court finds that § 922 (g)(3) does not violate the Second Amendment on its face, the statute should not apply to a person like Mr. Harrison, who was merely found with a controlled substance in his vehicle and who has no criminal history of using controlled substances. This set of circumstances is not "distinctly similar" or even "relevantly analogous" to founding era prohibitions on the right to bear arms. Though intoxicants existed at the founding, the government cannot establish that eighteenth century history supports stripping a man of his ability to defend himself because he possessed an intoxicant. Because the Government cannot establish that § 922(g)(3) is consistent with the Nation's historical tradition of firearm regulation it violates the Second Amendment facially and as applied to Mr. Harrison.

15

## CONCLUSION

Section 922(g)(3) is unconstitutionally vague and fails to given adequate notice of the conduct it prohibits. Further, it impermissibly restricts a person from exercising their right to defend themselves, their families, and their homes. Because there is no historical precedent to support the regulation, the provision is unconstitutional and the Indictment against Mr. Harrison should be dismissed.

Respectfully submitted

s/ *J.P. Hill*
_____
J.P. HILL, OBA No. 31085
ASSISTANT FEDERAL PUBLIC DEFENDER
FEDERAL PUBLIC DEFENDER ORGANIZATION
WESTERN DISTRICT OF OKLAHOMA
215 Dean A. McGee, Suite 109
Oklahoma City, OK 73102
Telephone: 405-609-5941
Fax: 405-609-5932
jp_hill@fd.org
Counsel for Defendant

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of October 2022, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant: Stephanie Powers, Assistant United States Attorney.

s/ *J.P. Hill*
_____
J.P. HILL

16